IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| CLINTON C. SHONKWILER,<br><br>     Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>     Defendant. | **REPORT AND RECOMMENDATION**<br><br>Case No. 2:13-cv-01094-CW-EJF<br><br>District Court Judge Clark Waddoups<br><br>Magistrate Judge Evelyn J. Furse |

     Plaintiff Clinton C. Shonkwiler ("Mr. Shonkwiler") asks the Court to reverse and remand the Social Security Administration's final agency decision denying his Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.  The Administrative Law Judge ("ALJ") determined that Mr. Shonkwiler did not meet the eligibility standards for benefits because he "has not been under disability within the meaning of the Social Security Act from June 7, 2009, through the date of th[e ALJ's] decision."  (Admin. R. Doc. 17, certified copy tr. of R. of admin. Proceedings: Clinton Shonkwiler (hereafter "Tr. __"). )  Having carefully considered the complete record and the parties' Memoranda in this matter,[1] this Court Recommends the District Court AFFIRM the Commissioner's decision that Mr. Shonkwiler does not qualify for Disability Insurance Benefits.

---

[1] On February 26, 2014, pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1), Judge Clark Waddoups referred the case to Magistrate Judge Evelyn J. Furse for report and recommendation on all dispositive matters.  (*See* ECF No. 10.)

## FACTUAL AND PROCEDURAL HISTORY

Mr. Shonkwiler, born in January 1973, alleges disability due to a torn hip labrum, testicular pain, and anxiety disorder.  (Tr. 19.)  In June 2010, Mr. Shonkwiler filed for DIB alleging an onset date of disability of June 7, 2009.  (Tr. 17.)  The Commissioner initially denied the claim on September 17, 2010, and again upon reconsideration on January 31, 2011.  (*Id.*)  At Mr. Shonkwiler's request, a hearing took place before an ALJ on July 18, 2012.  (*Id.*)  At the hearing, Mr. Shonkwiler amended his alleged onset date to October 1, 2009.  (*Id.*)  On October 16, 2012, the ALJ issued a decision denying Mr. Shonkwiler's claims.  (Tr. 17–28.)  Mr. Shonkwiler then requested the Appeals Council review the ALJ's decision, however, the Appeals Council denied that request, (tr. 1–3), making the ALJ's Decision the Commissioner's final decision for purposes of judicial review under 42 U.S.C. § 405(g).  *See* 20 C.F.R. § 404.981.

### I.  Work and Medical History

Between 1997 and September 2009, Mr. Shonkwiler held various positions, including: car wash detailer, assistant manager, cashier, HVAC helper, pipe setter helper, sales clerk, plumbing helper, and retail manager.  (Tr. 44–51.)  Although laid off from his last job, Mr. Shonkwiler testified that shortly after the layoff, his physical condition worsened to the point that he could not work.  (Tr. 44–46.)

Mr. Shonkwiler alleges that he first injured his hip somewhere between 2008 and 2009. (Tr. 53.)  Mr. Shonkwiler has given conflicting reports on how the injury occurred:  he told a chiropractor that he injured his hip when he was hit with a pipe wrench, (tr. 286), but he told Dr. Justin Johnsen, M.D. ("Dr. Johnsen") that he injured his hip when he fell from a ladder, (tr. 342). Mr. Shonkwiler testified that he has hip pain on a regular basis.  (Tr. 54.)  At the time of the evidentiary hearing, Mr. Shonkwiler testified that he has used a cane for about three years.  (Tr.

55.) In addition to his hip pain, Mr. Shonkwiler testified that he regularly experiences sharp pain in his right testicle, which most likely stems from a cyst on the testicle. (Tr. 54, 56.)

Mr. Shonkwiler first sought medical treatment for his hip on November 23, 2009, when he saw Dr. Walter L. Ogden, M.D. ("Dr. Ogden"), who ordered an x-ray. (Tr. 273.) On June 24, 2010, Dr. Ogden scheduled an MRI because the hip pain had not improved. (Tr. 272.) The initial MRI, without contrast dye, indicated that Mr. Shonkwiler may have suffered a labral tear of the hip joint. (Tr. 283.) The findings also noted that Mr. Shonkwiler has a cyst on his right testicle. (*Id.*) On July 9, 2010, a second MRI, with contrast dye, confirmed Mr. Shonkwiler suffered a labral tear. (Tr. 281.) After discussing the MRI results, Dr. Ogden recommended Mr. Shonkwiler see an orthopedist. (Tr. 270.)

On August 28, 2010, Dr. Johnsen examined Mr. Shonkwiler for the Department of Workforce Services and noted that he had a decreased range of motion in his injured right hip and pain with movement but did not review the MRIs. (Tr. 342–45.) Notwithstanding, Dr. Johnsen's findings showed "[n]o joint swelling, erythema, effusion, tenderness or deformity" of the hip joint, and Mr. Shonkwiler did not have any difficulty getting onto and off of the examination table. (Tr. 345.) Additionally, Mr. Shonkwiler could carry light objects, squat and rise with difficulty, and "hop on one foot bilaterally with difficulty on the right." (*Id.*) Lastly, Dr. Johnsen opined that Mr. Shonkwiler's hip impairment "limit[ed] his ability to perform strenuous activity, walk long distances and carry heavy objects." (*Id.*)

On September 27, 2010, Dr. Thomas Bigham, D.O. ("Dr. Bigham") saw Mr. Shonkwiler and confirmed he suffered a labral tear in his right hip. (Tr. 436.) Dr. Bigham also opined that Mr. Shonkwiler would most likely need surgery to repair the hip because that type of injury does not heal on its own. (*Id.*)

On June 28, 2012, Dr. David Grygla, D.O., completed a Physical Residual Functional Capacity Statement, the first and only document from Dr. Grygla in the record.  (Tr. 496–99.)  Dr. Grygla did not examine Mr. Shonkwiler; rather, he formed his opinions solely from Mr. Shonkwiler's history and medical files, including medical imaging.  (Tr. 499.)  In his statement, Dr. Grygla noted that Mr. Shonkwiler has a labral tear, as well as hip and groin pain.  (Tr. 496.)  Dr. Grygla did not include a response to question six, which provides: "Identify your patient's most significant clinical findings and objective signs."  (*Id.*)  Significantly, Dr. Grygla indicated that Mr. Shonkwiler could not "walk one city block or more without rest or severe pain," could not "walk one block or more on rough or uneven ground," but contradictorily, he could walk fifteen minutes at one time without rest.  (Tr. 497.)

On August 25, 2010, Dr. Tim Kockler, Ph.D. ("Dr. Kockler") examined Mr. Shonkwiler to determine his psychological ability for significant gainful activity for the Department of Workforce Services.  Dr. Kockler noted that Mr. Shonkwiler "appeared to be a questionable historian," (tr. 336), and exhibited "evidence of symptom exaggeration in a secondary gain setting."  (Tr. 338.)  Dr. Laurie Sullivan, Ph.D., a state psychological consultant, supports this conclusion with her finding of inconsistencies in Mr. Shonkwiler's reports and "some evidence that he [was] exaggerating at least some of his [symptoms]."  (Tr. 487.)  Dr. Kockler diagnosed Mr. Shonkwiler with an anxiety disorder but noted the need to rule out panic disorder with agoraphobia.  (Tr. 338.)

During the hearing, Mr. Shonkwiler complained of hearing impairment, especially when in large crowds.  (Tr. 61–62.)  A report from Jeffrey Manwaring, Clinical Audiologist, corroborated this testimony indicating that Mr. Shonkwiler has "mild to moderate sensorineural

hearing loss in both the left and right ears." (Tr. 437.) As a result, Mr. Shonkwiler uses hearing aids. (Tr. 61–62.)

## STANDARD OF REVIEW

42 U.S.C. section 405(g) provides for judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA"). The Court reviews the Commissioner's decision to determine whether the record as a whole contains substantial evidence in support of the Commissioner's factual findings and whether the SSA applied the correct legal standards. 42 U.S.C. §405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Commissioner's findings shall stand if supported by substantial evidence. 42 U.S.C. § 405(g).

Adequate, relevant evidence that a reasonable mind might accept to support a conclusion constitutes substantial evidence, and "[e]vidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994). The standard "requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. "Evidence is not substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion." *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (internal quotations marks and citations omitted). Moreover, "[a] finding of 'no substantial evidence' will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (internal quotation marks and citations omitted).

Although the reviewing court considers "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," the court

"will not reweigh the evidence or substitute [its] judgment for the Commissioner's," *Lax*, 489 F.3d at 1084 (internal quotation marks and citations omitted), but "review only the *sufficiency* of the evidence," *Oldham v. Astrue,* 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). The court does not have to accept the Commissioner's findings mechanically, but will "examine the record as a whole, including whatever in the record fairly detracts from the weight of the [Commissioner's] decision and, on that basis, determine if the substantiality of the evidence test has been met." *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994) (internal quotation marks and citation omitted). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence,'" and the court may not "'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

In addition to a lack of substantial evidence, the Court may reverse where the Commissioner uses the wrong legal standards, or the Commissioner fails to demonstrate reliance on the correct legal standards. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *Thomson v. Sullivan*; 987 F.2d 1482, 1487 (10th Cir. 1993); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993).

### **LEGAL STANDARDS**

The Social Security Act ("Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  Moreover,

the Act considers an individual disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.*

In determining whether a claimant qualifies as disabled within the meaning of the Act, the SSA employs a five-part sequential evaluation. *See* 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750–53 (10th Cir. 1988); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987). The analysis evaluates whether:

(1) The claimant presently engages in substantial gainful activity;
(2) The claimant has a medically severe physical or mental impairment or impairments;
(3) The impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which preclude substantial gainful activity;
(4) The impairment prevents the claimant from performing his or her past work; and
(5) The claimant possesses a residual functional capacity to perform other work in the national economy considering his or her age, education, and work experience.

*See* 20 C.F.R. § 404.1520. The claimant has the initial burden of establishing the disability in the first four steps. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work existing in the national economy. *Id.*

## **ANALYSIS**

In this case, the ALJ applied the five-step sequential disability evaluation and made the following findings of fact and conclusions of law with respect to Mr. Shonkwiler:

1. "[Mr. Shonkwiler] meets the insured status requirements of the Social Security Act through December 31, 2014." (Tr. 19.)
2. "[Mr. Shonkwiler] did not engage in substantial gainful activity on or after October 1, 2009, the amended alleged onset date." (*Id.*)
3. "[Mr. Shonkwiler] has the following severe impairments: right hip labrum tear, testicular pain, and an anxiety disorder." (*Id.*)
4. "[Mr. Shonkwiler] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 20.)
5. Further, "[Mr. Shonkwiler] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he can occasionally lift and carry ten pounds, and frequently lift and carry less than ten pounds, stand or walk in thirty to forty-five minute increments for about two hours in an eight-hour workday; sit in thirty to forty-five minute increments for about six hours in an eight-hour workday, with the option of sitting or standing and walking at will. He is unlimited in pushing and pulling, including the operation of hand and foot controls, other than as shown for lift and carry limitations. He can occasionally climb ramps, stairs, ladders, ropes and scaffolds, stoop, kneel, crouch and crawl. He can frequently balance. He has no manipulative, visual, or speaking limitations. He has a mild to moderate bilateral sensorineural hearing deficit and would have difficulty hearing ordinary speech if there was background noise present. He should avoid concentrated exposure to extreme cold, noise, hazards and vibrations. He is unlimited in his exposure to extreme heat, wetness, humidity, and pulmonary irritants. He is limited to simple, routine work. His ability to use judgment in making work-related decisions for simple, routine work is not significantly limited. He should have only occasional job contact with the general public, supervisors or co-workers. He requires a stable work setting, with few changes in routine, and with no significant goal setting or plan making." (Tr. 21.)
6. "[Mr. Shonkwiler] is unable to perform any past relevant work." (Tr. 26.)
7. "[Mr. Shonkwiler] was born on January 26, 1973 and was 36 years old, which defined as a younger individual age 18-44, on the alleged disability onset date." (*Id.*)
8. "[Mr. Shonkwiler] has a limited education and is able to communicate in English . . . ." (*Id.*)
9. "Transferability of jobs skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Mr. Shonkwiler] is 'not disabled,' whether or not [Mr. Shonkwiler] has transferable job skills." (*Id.*)
10. "Considering [Mr. Shonkwiler's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Mr. Shonkwiler] can perform." (*Id.*)
11. "[Mr. Shonkwiler] has not been under a disability, as defined in the Social Security Act, from June 7, 2009, through the date of this decision." (Tr. 27.)

In short, the ALJ found that Mr. Shonkwiler did not engage in substantial gainful activity since his alleged onset date because of severe physical and mental impairments. (Tr. 19.) Despite those impairments, the ALJ found Mr. Shonkwiler could still perform sedentary work and therefore, did not qualify for DIB. (Tr. 21-27.) Specifically, Mr. Shonkwiler could perform the following sedentary jobs: touch-up screener with 75,000 positions existing in the national economy, reduced by 70% to 22,500 positions to account for Mr. Shonkwiler's limitations; and semi-conductor bonder with 140,000 positions existing in the national economy, reduced by 70% to 42,000 positions. (Tr. 27.)

In support of his claim for reversal of the Commissioner's decision, Mr. Shonkwiler contends: (1) the ALJ did not give enough weight to Dr. Grygla's medical opinion, and (2) the ALJ erred by failing to address Mr. Shonkwiler's labral hip tear in his step three analysis. (Pl.'s Opening Br. 8, 11; ECF No. 14.)[2] The Court addresses each argument in turn.

## I. Evaluation of the Weight Given to Dr. Grygla's Medical Opinions

First, Mr. Shonkwiler contends the ALJ erred by not giving Dr. Grygla's opinions enough weight. (Pl.'s Opening Br. 11; ECF No. 14.) Specifically, Mr. Shonkwiler argues that Dr. Grygla, as his current treating physician, deserves more weight accorded to his opinions. (*Id.*) In response, the Commissioner argues that Dr. Grygla did not serve as either Mr. Shonkwiler's treating physician or his examining physician, and consequently, the ALJ did not err in giving his medical opinions little weight. (Def.'s Answer Br. 19–20; ECF No. 17.)

---

[2] By addressing only these two points of alleged error in his opening brief, Mr. Shonkwiler waived any additional challenges to the ALJ's decision. *See Anderson v. Dep't of Labor*, 422 F.3d 1155, 1182 n.51 (10th Cir. 2005) (failing to raise appeal issues in opening brief waives those points because doing so deprives the opponent of the opportunity to address the arguments).

Pursuant to Social Security Administration regulations, an ALJ must evaluate every medical source before designating its weight.  *See* 20 C.F.R. § 404.1527(c).  When determining what weight to assign each medical opinion, the ALJ must consider the following factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300–01 (10th Cir. 2003) (citation omitted).  In general, "[t]he treating physician's opinion is given particular weight because of his 'unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'"  *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) (citing 20 C.F.R. § 416.927(d)(2)).  The duration and frequency of the treatment relationship constitutes a critical factor in determining whether a physician qualifies as the claimant's treating physician.  *See id.*

> "The treating physician doctrine is based on the assumption that a medical professional *who has dealt with a claimant and his maladies over a long period of time* will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records."

*Id.* (quoting *Barker v. Shalala,* 40 F.3d 789, 794 (6th Cir. 1994)) (emphasis in *Doyal*).  Furthermore, "[a] physician's opinion is therefore not entitled to controlling weight on the basis of a fleeting relationship, or merely because the claimant designates the physician as her treating source."  *Id.* at 763.  Additionally, "the opinion of an examining physician who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion."  *Id.*

Even where a physician does not qualify as a treating physician, the ALJ "must set forth 'specific, legitimate reasons' for his decision;" *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) (quoting *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996)), however, the ALJ's decision need not discuss explicitly all of the factors for each of the medical opinions. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (stating that a lack of discussion of each factor does not prevent the court from according the decision meaningful review).

Turning to the record, very little evidence exists documenting the extent of Mr. Shonkwiler's and Dr. Grygla's relationship.  In fact, only one document from Dr. Grygla, a Physical RFC Statement, appears in the entire record.  (Tr. 496-99.)  More importantly, that sole document reveals that Dr. Grygla bases his opinion of Mr. Shonkwiler's RFC on limited information—Mr. Shonkwiler's past medical files and history, and x-rays, CT scans, and MRI's.  (*Id.*)  The record establishes that Dr. Grygla's opinion lacked chart and progress notes and that Dr. Grygla did not examine Mr. Shonkwiler.  (*Id.*)

In addition to the lack of evidence establishing Dr. Grygla as Mr. Shonkwiler's treating or examining physician, Dr. Grygla's opinion conflicts with more persuasive evidence in the record.  For example, Dr. Grygla's RFC statement indicates that Mr. Shonkwiler cannot walk one city block without rest or severe pain; however, Mr. Shonkwiler testified that he can walk a block before taking a break.  (*Id.*; tr. 64.)  Dr. Grygla's opinion also indicated that Mr. Shonkwiler cannot walk one block or more on rough or uneven ground; however, Mr. Shonkwiler testified that he can walk over uneven ground, albeit with difficulty.  (*Id.*) Additionally, Mr. Shonkwiler testified he walks his dog.  (Tr. 22, 64.)

As required, in his decision, the ALJ expressed his reasoning for giving Dr. Grygla's opinion little weight.  The ALJ noted, "there are no chart or progress notes from Dr. Grygla in

11

the file, and the conclusions Dr. Grygla reaches are not supported by the preponderance of the evidence. Consequently, his opinions are given little weight." (Tr. 25.) The ALJ's explanation demonstrates that he weighed the six factors promulgated by the Social Security Administration in assigning weight to Dr. Grygla's opinions. Specifically, the lack of progress notes and evidence showing a treating or examining relationship relate to factors one and two. Moreover, the contradictory nature of Dr. Grygla's opinions relates to factors three and four. Each of these factors supports the ALJ's decision to give Dr. Grygla's opinions little weight.

In sum, the undersigned RECOMMENDS the Court find substantial evidence supports the ALJ's decision and demonstrates he considered the six factors and properly assigned little weight to Dr. Grygla's opinions.

## II. The ALJ's Step Three Analysis

Second, Mr. Shonkwiler contends that the ALJ erred at step three of the sequential evaluation process by failing to discuss his labral hip tear and whether it qualifies as an impairment that met Listing 1.02A. (Pl.'s Opening Br. 8; ECF No. 14.)

Step three of the sequential evaluation process "asks whether any 'medically severe impairment,' alone or in combination with other impairments," meets or equals "any of a number of listed impairments so severe as to preclude 'substantial gainful employment.'" *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). If the claimant's impairment(s) meets or equals the listing, the ALJ must find the impairment conclusively disabling. *See* 20 C.F.R. § 404.1520(d). If the impairment(s) does not meet or equal the listing, the claimant must establish at step four that his impairment prevents him from performing work he previously performed. *See* 20 C.F.R. § 404.1520(e), (f).

>
> To satisfy Listing 1.02, the claimant must show that he has:
>
> [1] [a] gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability), and
> [2] chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and
> [3] findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With
> [4] Involvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P. app. 1 § 1.02. The Commissioner responds to Mr. Shonkwiler's argument asserting that any failure to discuss the labral hip tear constituted only harmless error because Mr. Shonkwiler's labral hip tear does not meet the criteria for Listing 1.02A as demonstrated by the ALJ's RFC finding. (Def.'s Answer Br. 10; ECF No. 17.) The Commissioner supports her position by relying on *Fischer-Ross v. Barnhart*.

In *Fischer-Ross v. Barnhart*, the Commissioner appealed the district court's decision to remand a case based on insufficient findings at step three. *See* 431 F.3d 729, 731 (10th Cir. 2005). The ALJ made a conclusory finding that the claimant's combination of impairments did not meet or equal "'the criteria of any impairment listed in . . . the Listing of Impairments.'" *Id.* at 732. Despite the conclusory finding at step three and in reversing the district court's decision to remand the case, the court applied the ALJ's detailed findings at steps four and five to find the ALJ had made sufficient findings to support a denial of disability. *See id.* at 734–35. The court explained that "an ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment," as the failure at step three results in "harmless error." *Id.* at 733.

Harmless error occurs "where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Id.* at 733–34. Additionally, the court reasoned that the harmless error analysis reflects sound policy because it prevents "unwarranted remands [that] needlessly prolong[] administrative proceedings." *Id.* at 730.

     In support of Mr. Shonkwiler's position that the Court should remand the case to require the ALJ to address Listing 1.02A, he cites *Murdock v. Astrue*. (Reply Br. at 2, ECF No. 18.) In *Murdock v. Astrue*, the Tenth Circuit reversed and remanded the district court's decision to uphold the ALJ's finding that the claimant did not qualify as disabled. 458 F. App'x 702, 702 (10th Cir. 2012). In that case, the ALJ committed a reversible error because he did not address Listing 1.02A or the evidence that would enable the court to understand why the ALJ found the claimant did not meet the listing. Despite the reversal, the court noted that "[a] step three error . . . does not automatically require remand. Instead, we must consider whether 'confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination under review.'" *Id.* at 703 (quoting *Fischer-Ross*, 431 F.3d at 734). Specifically, the Court must consider whether the ALJ's findings at other steps allow us to "confidently say that no reasonable administrative factfinder . . . could have resolved the factual matter in any other way." *Fischer-Ross*, 431 F.3d at 733–34. To draw this conclusion, the Court must review the ALJ's findings at all steps and determine whether they preclude a finding that Mr. Shonkwiler's impairments meet or equal Listing 1.02A.

     The Commissioner does not challenge the first requirement under Listing 1.02A— namely that Mr. Shonkwiler's labral hip tear constitutes "[a] gross anatomical deformity." As such, the Court will assume that Mr. Shonkwiler meets the first requirement. The Commissioner

does contend, however, that Mr. Shonkwiler cannot meet each of the three remaining requirements. The Court will address each of these in turn.

### A. Chronic Joint Pain and Stiffness

The second requirement under Listing 1.02 provides that the claimant must have "chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s) . . . . " 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.02. In his findings, the ALJ noted that he had taken Mr. Shonkwiler's right hip pain into consideration, and as such, determined that his RFC only allowed for sedentary work "with limited episodes of sitting and standing or walking to thirty to forty-five minutes each." (Tr. 26.) Additionally, Dr. Johnsen, whose medical evaluations the ALJ factored into his decision, (*id.*), evaluated Mr. Shonkwiler on August 28, 2010, and noted that he had a decreased range of motion in his injured leg and experienced both pain and difficulty with movement. (Tr. 345.) From the findings and record, the ALJ's opinion seems to acknowledge, as supported by substantial evidence, that Mr. Shonkwiler experienced chronic hip pain, stiffness, and limitation of motion. Thus, the ALJ's findings would tend to indicate Mr. Shonkwiler also met this second criterion in Listing 1.02.

### B. Joint Space Narrowing

The third requirement under Listing 1.02 provides that *the claimant must show* "findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)." 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.02.

Although the ALJ did not address joint space narrowing, bony destruction, or ankylosis affecting Mr. Shonkwiler's hip, the record likewise lacks any evidence or medical opinion that Mr. Shonkwiler had joint space narrowing, bony destruction, or ankylosis of the hip. The

claimant must show he meets all of the elements in Listing 1.02, *see Sullivan v. Zebley,* 493 U.S. 521, 530–31 (1990), and Mr. Shonkwiler has failed to satisfy his burden by not pointing to any evidence to support this requirement. Remanding this issue to the ALJ would put him in the same position in which this Court finds itself—unable to find any evidence that Mr. Shonkwiler meets this requirement. Indeed, if such evidence existed, one would expect to see mention of it in the x-ray or MRI reports, but no such evidence exists. (*See* tr. 281–84.) Instead, the MRI report states "[t]he left hip is grossly normal" but indicates the likelihood of a labral tear. (Tr. 284.) Considering the lack of evidence or any medical expert's opinion to support Mr. Shonkwiler's assertion that his condition qualifies as including joint space narrowing, bony destruction, or ankylosis, the Court sees no way the ALJ could reach a different conclusion.

Thus, the undersigned RECOMMENDS the District Court find the ALJ committed harmless error in failing to analyze Listing 1.02 in more detail.

### C. Ability to Ambulate Effectively

The fourth requirement under Listing 1.02 provides that the claimant must have "[i]nvolvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.02A. To assess the claimant's ability to ambulate, the ALJ must determine whether he is:

> capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00B2b(2).

   The ALJ's decision contains numerous findings relating to Mr. Shonkwiler's ability to ambulate.  When determining Mr. Shonkwiler's RFC, the ALJ noted that "he can . . . stand or walk in thirty to forty-five minute increments for about two hours in an eight-hour workday" and "[h]e can occasionally climb ramps, stairs, ladders, ropes and scaffolds."  (Tr. 21.)  The ALJ also noted that Mr. Shonkwiler "can do laundry, and the dishes, take a shower, and attend to his pets and doctor appointments.  He walks his dog.  He attends church once a week."  (Tr. 22.)  Mr. Shonkwiler testified that he can walk a block before needing a break, he can climb several steps with the aid of a handrail, and he uses one cane as his only assistive device.  (Tr. 23, 64.)  Additionally, while he avoids it, he can also walk over rough or uneven ground.  (Tr. 23, 64.)

   Mr. Shonkwiler contends he meets one of 1.00B's examples of an inability to ambulate effectively—namely "the inability to walk a block at a reasonable pace on rough or uneven surfaces."  (Pl.'s Reply Br. 4; ECF No. 18.); 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00B2b(2). He supports this contention both by stating that he never testified that he could walk one block on a rough or uneven surface and that Dr. Grygla's opinion substantiates his position.  (Pl.'s Reply Br. 4.; ECF No. 18.)

   The Court does not find this argument persuasive.  As noted previously, Mr. Shonkwiler testified in court that he could walk one block before needing a break and that he can walk on rough or uneven ground.  Moreover, the ALJ's findings coupled with Mr. Shonkwiler's testimony evidence that Mr. Shonkwiler does not meet any of 1.00B's examples of an inability to ambulate effectively.  Mr. Shonkwiler only uses one cane, can walk one block without needing a break, can walk on uneven ground, can drive himself to the store and doctor's appointments, walks his dog, and can climb a few steps with the use of a hand rail.

While 1.00B notes that these examples do not exhaust the ways to meet the requirement, substantial evidence in the record supports the ALJ's finding that Mr. Shonkwiler has not shown an inability to walk effectively.  This Court notes that 1.02A and 1.00B use the word "inability," not "difficulty."  Mr. Shonkwiler has *difficulty* when ambulating; however, having difficulty ambulating does not equate with an inability to ambulate effectively.

Importantly, in his decision, the ALJ noted that Dr. Grygla's conclusions "are not supported by the preponderance of the evidence," and therefore gave them little weight.  (Tr. 25.)  In addition to an absence of chart or progress notes, Dr. Grygla's opinion contradicts Mr. Shonkwiler's own testimony that he can walk one block without rest and that he is able to walk over uneven ground.  Pairing the little weight given to Dr. Grygla's opinion with the other record evidence, the undersigned RECOMMENDS the District Court find the ALJ committed harmless error at step three because the rest of the ALJ's decision reflects his finding, supported by substantial evidence, that Mr. Shonkwiler suffers from difficulty ambulating, *not* an inability to ambulate.

## RECOMMENDATION

Based on the foregoing, the undersigned Magistrate Judge RECOMMENDS the District Court AFFIRM the Commissioner's decision not to award Social Security benefits.

The Court will send copies of this Report and Recommendation to the parties, and notifies them of their right to object to the same.  *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2).  The Court further notifies the parties they must file any objection to this Report and Recommendation with the Clerk of the Court within fourteen (14) days after being served with a copy thereof.  *Id.*  Failure to object may constitute waiver of objections upon subsequent review.

DATED this <u>3rd</u> day of <u>December</u> 2014.

                         BY THE COURT:

                         _____
                         Evelyn J. Furse
                         United States Magistrate Judge